**NOT FOR PUBLICATION**                              [37, 41, 42, 45, 51]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| _____ | : | |
| ST. PAUL FIRE AND MARINE | : | |
| INSURANCE COMPANY, | : | |
|  | : | |
| Plaintiff, | : | |
|  | : | Civil No. 06-2759 (FLW) |
| v. | : | |
|  | : | **OPINION** |
| BROTHER INTERNATIONAL | : | |
| CORP., | : | |
|  | : | |
| Defendant. | : | |
| _____ | : | |

**WOLFSON, UNITED STATES DISTRICT JUDGE**

Before the Court are cross-motions by Plaintiff, St. Paul Fire and Marine Insurance Company ("St. Paul") and Defendant, Brother International Corp. ("Brother"), for Summary Judgment, pursuant to Fed. R. Civ. P. 56(c), on St. Paul's Complaint against Brother for a declaratory judgment concerning its rights and obligations under an insurance policy between the two corporations, as well as Brother's cross-complaint for coverage.  St. Paul also filed two Motions to Strike: (1) motion to strike all references to confidential settlement communications discussed or referred to in Defendant's (a) Opposition and Cross-Motion for Summary Judgment, (b) Statement of Undisputed Material Facts, and (c) Certification of Henry Sacco; and (2) motion to strike arguments allegedly raised for the first time in Defendant's Reply in Support of its Motion for Summary Judgment, or alternatively, for leave to file a sur-reply under Local Rule 7.1 (d)(6).

1

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1404(a), 2201, and 2202.  For the reasons that follow, the Court finds that Plaintiff has met its burden and shown that no material issues of fact exist to defeat its Motion for Summary Judgment, and that Defendant's Motion for Summary Judgment is denied.  Further, Plaintiff's Motion to Strike all references to confidential settlement communications is granted, and Plaintiff's Motion to Strike arguments allegedly raised for the first time in Defendant's Reply in Support of Its Motion for Summary Judgment is now moot, and therefore, the Motion is denied.

## I.     BACKGROUND

On June 3, 2003, a nationwide class action suit was brought by Stonecrafters, Inc. against Brother in Illinois state court, in <u>Stonecrafters, Inc. v. Brother International Corporation, d/b/a Brother Mall</u>, ("Stonecrafters Compl.")[1]  alleging violations of: (1) the Telephone Consumer Protection Act ("TCPA");[2] (2) "the Illinois Consumer Fraud and Deceptive Business Practices

---

[1]A copy of the <u>Stonecrafters</u> Complaint is attached as "Exhibit A" to the Certification of Henry Sacco, dated March 19, 2007 ("Sacco Cert.").

[2]The TCPA prohibits the sending of unsolicited faxed advertisements. The TCPA, in part, finds it unlawful:

> for any person within the United States, or any person outside the United States if the recipient is within the United States--
>
> *       *       *
>
> (c) to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless--
>
>   (I) the unsolicited advertisement is from a sender with an established business relationship with the recipient;
>
>   (ii) the sender obtained the number of the telephone facsimile machine through--
>
>       (I) the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, or

Act;" and (3) "the common law of conversion." Id. at 2. The class challenged Brother's "policy and practice of sending unsolicited faxes to fax machines throughout the United States even when it [Brother] knows or should know that it did not have the recipient's permission to receive advertising from Defendant [Brother] and had no procedures in place to retain recipient permission required by state and federal law." Id. at 1. The unsolicited faxes, known as "blast faxes,"[3] advertised Brother's P-Touch labeling systems. Id. at Ex. A.

Shortly after the filing of the Stonecrafters lawsuit, St. Paul received a copy of the Summons, Class Action Complaint and Motion for Class Certification "as first notice of" Brother's "claim under [St. Paul] CGL [Technology Commercial General Liability] policy # TEO2901670." Fax Cover Sheet from Anne Albanese to Dan SinClair, dated June 23, 2003.[4] In a letter dated July 15, 2003, St. Paul notified Brother that it was declining "to defend or indemnify Brother" in the Stonecrafters lawsuit for the following reasons:

---

(II) a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution, except that this clause shall not apply in the case of an unsolicited advertisement that is sent based on an established business relationship with the recipient that was in existence before the date of enactment of the Junk Fax Prevention Act of 2005 [enacted July 9, 2005] if the sender possessed the facsimile machine number of the recipient before such date of enactment; and

(iii) the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D) . . . .

47 U.S.C. § 227(b)(1)(c).

[3]When companies, like Brother, send thousands of unsolicited fax advertisements, these faxes are referred to as blast faxes.

[4]A copy of the fax cover sheet is attached as "Exhibit 2" to the Certification of Heather M. Hughes, dated February 22, 2007 ("Hughes Cert.").

3

- The complaint does not allege "bodily injury" or "property damage".

- The complaint does not allege injury or damage caused by an "event" as defined by the policy.

- The complaint does not allege "personal injury" or "advertising injury" as defined by the policy.

- To the extent the complaint alleges "property damage" which is disputed, then the Expected or Intended Bodily Injury or Property Damage" [sic] exclusion would apply.

- To the extent the complaint alleged "personal injury" or advertising injury", which is disputed, the "Deliberately Breaking the Law" exclusion may apply.

Letter from Laina L. Heathman, Senior Claim Specialist, to Dennis Powers, Esq., dated July 15, 2003.[5]

However, St. Paul eventually agreed to provide Brother with a defense under a reservation of rights. In a May 11, 2004 letter, St. Paul confirmed and supplemented an April 14, 2004 e-mail advising Brother that:

in light of certain judicial developments, St. Paul Fire and Marine Insurance Company (St. Paul) will agree, under a complete reservation of rights, to reimburse Brother International Corp. ("Brother") for the reasonable fees and expenses that it has incurred in defending the *Stonecrafters, Inc.* class action lawsuit from the date on which the suit was tendered to St. Paul for a defense. In addition, St. Paul will also presently agree to defend Brother (i.e., St. Paul will reimburse reasonable defense fees and costs incurred by counsel of Brother's choice) on a going-forward basis, subject to the reservation of rights . . . .

Letter from James C. Zacharski to Henry J. Sacco, dated May 11, 2004, at 1.[6]  St. Paul reserved

---

[5] A copy of the letter is attached as "Exhibit 3" to the Hughes Cert.

[6] A copy of the letter is attached as "Exhibit 4" to the Hughes Cert.

"its right to deny any duty to defend or indemnify Brother on at least the following grounds:"

- The complaint does not allege or seek to recover damages for "bodily injury" or "property damage" as those terms are defined by the St. Paul policy.

- Even if the complaint did allege or seek to recover damages for "bodily injury" or "property damage," any such injury or damage was not caused by an "event" as that term is defined by the St. Paul policy.

- Even if the complaint did allege or seek to recover damages for "bodily injury" or "property damage," coverage for any such injury or damage would be precluded by the exclusion for "Expected or intended bodily injury or property damage."

- The complaint does not allege or seek to recover damages for "personal injury" or "advertising injury" as those terms are defined by the St. Paul policy.  In particular, the complaint does not allege or seek to recover damages for any of the "personal injury offenses" or advertising injury offenses" listed in the St. Paul policy.

- Even if the complaint did allege or seek to recover damages for "personal injury" or "advertising injury," coverage for any such injury or damage may be precluded by the exclusion for "Deliberately breaking the law."

- The injunctive relief and attorneys' fees sought by the plaintiffs do not constitute damages under the St. Paul policy, and the amounts sought by the plaintiffs for violations of the Act, especially those trebled amounts sought for willful or knowing violations, may not constitute damages either.

Id. at 2.

Brother and Stonecrafters engaged in settlement negotiations, and on April 11, 2005, the Honorable Michael Sullivan of the Circuit Court of the 19th Judicial Circuit, McHenry Country, Illinois, granted Stonecrafters' motion for preliminary approval of its class action settlement with Brother, and the Stoncrafters lawsuit ultimately settled.  Judge Sullivan's Order, dated April 11,

5

2005.[7]  Thereafter, on September 22, 2005, St. Paul filed a Complaint for Declaratory Relief against Brother in the United States District Court for the Northern District of Illinois, Eastern Division.  St. Paul's Complaint for Declaratory Relief, dated September 22, 2005 ("St. Paul Compl."), at 1.  St. Paul sought "a determination of the parties' rights and obligations under a certain insurance policy that St. Paul issued to Brother with respect" to the Stonecrafters lawsuit. Id.  In its Complaint, St. Paul "addressed the insurance policy in effect from September 30, 2002 to September 30, 2003, Policy No. TE02901670."  St. Paul's Statement of Material Facts Pursuant to L. Civ. R. 56.1, dated February 22, 2007 ("St. Paul's Facts"), at ¶ 25; see also Brother's Statement of Undisputed Material Facts and Response to St. Paul's Facts, dated March 19, 2007 ("Brother's Facts"), at p. 10.  Brother filed a "cross-complaint against St. Paul" and "claimed coverage under the policy in effect for the previous year, Policy No. TE2901513 (September 30, 2001, to September 30, 2002), as well as under the 2002 to 2003 policy plead in St. Paul's Compliant."  St. Paul's Facts  at ¶ 26; see also Brother's Facts at 10.[8]

Brother then  filed  a Motion to Transfer Venue from the Norther District Court of Illinois, Eastern Division, to the District Court of New Jersey.  On June 1, 2006, the Honorable Joan B. Gottschall, U.S.D.J. granted Brother's Motion to Transfer, and as a result, St. Paul's action was transferred to this Court.  See Northern District Court of Illinois, Eastern Division, dated June 16, 2006 ("Transfer Order").  Judge Gotschall noted that "even St. Paul agrees that

---

[7]A copy of the Order is attached as "Exhibit 5" to the Hughes Cert.

[8]"St. Paul issued to Brother Policy No. TE2901513, effective September 30, 2001 to September 30, 2002, and Policy No. TE023901670, effective September 30, 2002 to September 30, 2003."   St. Paul's Facts  at ¶ 27; see also Brother's Facts at 10.  Each of these policies "include a Technology General Liability ('CGL') form and an Umbrella Excess Liability ('Umbrella') form."   St. Paul's Facts  at ¶ 28; see also Brother's Facts at 10.

New Jersey was the site of many events material to the litigation," and found "that even a cursory examination of the relevant factors suggest that New Jersey law apply to the present litigation." Id. at 5-10.

Currently before the Court are: (1) St. Paul's Motion for Summary Judgment; (2) Brother's Cross-Motion for Summary Judgment; and (3) St. Paul's two Motions to Strike. Both St. Paul and Brother concede that "New Jersey law likely applies to this dispute" and have both relied on New Jersey case law "regarding the interpretation and construction of insurance policies." St. Paul's Memorandum of Law in Support of Motion for Summary Judgment, dated February 22, 2007 ("St. Paul's Memo."), at 9; see also Brother's Opposition and Cross-Motion for Summary Judgment, dated March 19, 2007 ("Brother's Opp."), at 8. The Court agrees, that for purposes of the pending motions, New Jersey law controls.

Further, for purposes of these motions, St. Paul "[w]ithout admitting the applicability of the 2001 to 2002 policy," addressed both the 2001-2002 and 2002-2003 policies in its Motion. St. Paul's Memo at 5. St. Paul concedes that both policies "are substantively identical," and therefore, St. Paul in its papers "recites only the provisions in the CGL form on Policy No. TE290670. Id. The following four types of injury/damage provisions are covered under St. Paul's CGL policy: (1) bodily injury; (2) property damage; (3) personal injury; and (4) advertising-injury. St. Paul's Facts at ¶ 29; see also Brother's Facts at 11. In addition, to these provisions, Brother claims that St. Paul's CGL policy "also provided coverage for injury or damages based on errors and omissions." Brother's Facts at 11. However, the only types of injury/damage provisions at issue in the instant case are the "advertising injury" and "property damages" provisions.

7

For the following reasons, the Court finds that neither the "advertising injury" nor the "property damage" provision covers the <u>Stonecrafters</u> class-action, and therefore, St. Paul had no duty to defend or indemnify[9] Brother in the <u>Stonecrafters</u> litigation.

## II.    DISCUSSION

### A.    Standard for Summary Judgement Pursuant to <u>Fed. R. Civ. P.</u> 56(c)

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>Fed. R. Civ. P.</u> 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 330 (1986).  A fact is "material only if it might affect the outcome of the suit under the applicable rule of law." <u>Id.</u> Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  <u>Id.</u> The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment. <u>Celotex</u>, 477 U.S. at 330.  Once the moving party satisfies this initial burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." <u>Fed. R. Civ. P.</u> 56(e).  To do so, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Celotex Corp.</u>, 477 U.S. at 324. In other words, the non-moving party must "do more than simply show that there is some metaphysical doubt as to material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475

---

[9]An insurer's duty to defend is broader than the its duty to indemnify.  Therefore, if an insurer owes no duty to defend an insured, then it owes no duty to indemnify the insured.  <u>Frog, Switch & Mfg. Co. v. Travelers Ins. Co.</u>, 193 F.3d 742, 746 (3d Cir. 1999).

U.S. 574, 586 (1986); see also Ridgewood Bd. of Ed. v. Stokley, 172 F.3d 238, 252 (3d Cir.

1999).  A genuine issue of material fact is one that will permit a reasonable jury to return a

verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In

evaluating the evidence, a court must "view the inferences to be drawn from the underlying facts

in the light most favorable to the [non-moving] party."  Curley v. Klem, 298 F.3d 271, 276-77

(3d Cir. 2002).

The motion is appropriately granted when that party is entitled to judgment as a matter of

law. Anchorage Assocs. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. V.I.

1990). Even if a record contains facts that might provide support for a non-movant's position,

"the burden is on the [non-movant], not the court, to cull the record and affirmatively identify

genuine, material factual issues sufficient to defeat a motion for summary judgment." Morris v.

Orman, No. 87-5149, 1989 WL 17549, at *8 (E.D.Pa. Mar. 1, 1989) (citing Childers v. Joseph,

842 F.2d 689 (3d Cir. 1988)); see also Atkinson v. City of Phila., No. 99-1541, 2000 WL

793193, at *5 n.8 (E.D. Pa. June 20, 2000).

When a district court exercises diversity jurisdiction, it must apply the state law as the

highest court of that state would apply it.  See McKenna v. Ortho Pharmaceutical Corp., 622 F.2d

657, 661 (3d Cir.), cert. denied, 449 U.S. 976 (1980); see also Cooper Distrib. Co. v. Amana

Refrigeration, 63 F.3d 262, 274 (3d Cir. 1995).  Here, since the New Jersey Supreme Court has

not addressed the issues of coverage presently before this Court, I must predict how the New

Jersey Supreme Court would resolve these issues.  Id.

Under New Jersey precedent, "[t]he interpretation of an insurance contract is a question

of law for the court to determine, and can be resolved on summary judgment." Adron, Inc. v.

9

Home Ins. Co., 292 N.J. Super. 463, 473 (App. Div. 1996); see also Rao v. Universal

Underwriters Ins. Co., 228 N.J. Super. 396, 399 (App. Div. 1988) ("the interpretation of an

insurance contract" is a legal issue, and therefore, it is "appropriate for summary judgment").

Initially, the burden is on the insured to establish that it is entitled to coverage.  Adron, Inc., 292

N.J. Super. at 473.  The insurer has the burden to establish that any of the policy's exclusionary

provisions negate coverage.  Id.  Therefore, in the instant case, in order for St. Paul to obtain

summary judgment, St. Paul must show that Brother has failed to establish that it is entitled to

coverage and/or that an exclusion applied, thereby negating coverage.

**B.     New Jersey's Standard for the Interpretation of Insurance Contracts**

"When interpreting an insurance policy, courts should give the policy's words 'their

plain, ordinary meaning.'"  President v. Jenkins, 180 N.J. 550, 562 (2004) (quoting Zacarias v.

Allstate Ins. Co., 168 N.J. 590, 595 (2001)).  Thus, if a policy's terms "are clear, courts should

interpret the policy as written and avoid writing a better insurance policy than the one

purchased."  Id. (citing Gibson v. Callaghan, 158 N.J. 662, 670 (1999)); see also Argent v.

Bradley, 386 N.J. 343, 351 (2006) ("[w]here the policy is clear and unambiguous," a court is

"bound to enforce" the policy).  However, if a policy's terms are ambiguous, courts "often"

construe the policy "in favor of the insured."  Id. at 563; see also Argent, 386 N.J. at 351 ("[o]nly

where the language is ambiguous does the doctrine of reasonable expectations come into play,

permitting a construction that favors such expectation of an insured").  A genuine ambiguity

arises "where the phrasing of the policy is so confusing that the average policy holder cannot

make out the boundaries of coverage."  Weedo v. Vivino, 81 N.J. 233, 247 (1979).  In

determining whether an insurance policy is ambiguous, courts should not focus " upon the

10

language contained in one section of the contract." Morrison v. American Intern. Ins. Co. of America, 381 N.J. Super. 532, 541 (App. Div. 2005) (citing Werner Indus., Inc. v. First State Ins. Co., 112 N.J. 30, 37 (1988)).  Rather, the policy language at issue "should be read in the context of the entire policy in order to determine whether harmony can be found between the alleged ambiguous language and the remainder of the policy." Id.  (citing Zacarias, 168 N.J. at 603).

### C.     The Duty to Defend

An insurer's "'duty to defend comes into being when the complaint states a claim constituting a risk insured against.'" Voorhees v. Preferred Mutual Ins. Co., 128 N.J. 165, 173 (1992) (quoting Danek v. Hommer, 28 N.J. Super. 68, 77 (App. Div. 1953)).  The "duty to defend is determined by comparing the allegations in the complaint with the language of the insurance policy." Id.  Regardless of the complaint's merit, a duty to defend still arises so long as the allegations in the complaint and the policy language correspond. Id.

### D.     St. Paul's Advertising Injury Provision

St. Paul provides Brother with insurance coverage for an "advertising injury." Specifically, the "advertising injury" provision provides coverage  for the following:

> **Advertising injury liability.**   We'll pay amounts any protected person is legally required to pay as damages for covered advertising injury that:
>
> •       results from the advertising of your products, your work, or your completed work; and
>
> •       is caused by an advertising injury offense committed while this agreement is in effect.
>
> *                *                *
>
> ***Advertising injury*** means injury, other than bodily injury or personal injury, that's caused by an advertising injury offense.

11

> ***Advertising injury offense*** means any of the following offenses:
>
> •     Libel, or slander, in or with covered material.
>
> •     Making known to any person or organization covered material that disparages the business, premises, products, services, work, or completed work of others.
>
> •     Making known to any person or organization covered material that violates a person's right of privacy.
>
> •     Unauthorized use of any advertising material, or any slogan or title, of others in your advertising.

St. Paul's 2002-2003 Policy , Policy No. TE02901670, at p. 179.[10] "Covered material" is defined as: "any material in any form of expression, including material made known in or with any electronic means of communication, such as the Internet.[11]

At issue in the instant case is whether the advertising injury offense, "[m]aking known to any person or organization covered material that violates a person's right of privacy," compelled St. Paul to defend Brother in the class-action suit.  I find, for the following reasons,  that both the text of the advertising injury provision at issue and the context in which that provision appears in St. Paul's policy confirms in plain and unambiguous language that St. Paul had no duty to defend Brother in the Stonecrafters class-action suit.

      1.     Analysis of the Text of the Provision

_____St. Paul argues that it has no duty to defend Brother under its advertising injury provision for the following reasons: (1) St. Paul's policy only provides coverage for advertising injury

---

[10]A copy of the policy is attached as "Exhibit 10" to the Hughes Cert.

[11]St. Paul's 2001-2002 Policy, "Policy No. TE2901513 does not contain the phrase 'covered material,' and therefore does not contain this definition."   St. Paul's Facts  at ¶ 31, fn 2; see also Brother's Facts at 11.

offenses that involve privacy offenses concerning secrecy and not seclusion; (2) TCPA blast fax

claims, like the claim in the <u>Stonecrafters</u> class-action suit, are violations of only privacy offenses

concerning seclusion; and (3) "[e]very court to consider a St. Paul policy has concluded that its

advertising-injury provision does not apply to TCPA blast fax claims."  St. Paul's Memo. at 12-

18.  Brother argues that it is entitled to coverage because: (1) a recent New Jersey state court

decision found coverage in a TCPA blast fax case; and (2) "Courts in other jurisdictions that

have addressed the issue have nearly uniformly found that the protection of a person's right to

seclusion ro [sic] to be 'left alone,' is clearly one of the injuries that the TCPA was intended to

vindicate."  Brother's Opp. at 16-17.

        The "right of privacy" encompasses two rights: (1) the privacy right of secrecy; and (2)

the privacy right of seclusion.  <u>ACS Systems, Inc. v. St. Paul and Fire and Marine Ins. Co.</u>, 147

Cal. App. 4th 137, 148 (2nd App. Dist. 2007) (citing <u>Resource Bankshares Corp. v. St. Paul</u>

<u>Mercury Ins. Co.</u>, 407 F.3d 631, 640-41 (4th Cir. 2005); <u>American St. Ins. v. Capital Assoc.</u>

<u>Jackson Co.</u>, 492 F.3d 939, 941 (7th Cir. 2004)).  The privacy right of secrecy prevents the

"disclosure of personal information *to* others."  <u>ACS Systems, Inc.</u>, 147 Cal. App. 4th at 149

(emphasis in original).  However, the privacy right of seclusion protects a person's "right to be

free, in a particular location, from disturbance *by* others."  <u>Id.</u> at 148-49 (emphasis in original).

Accordingly, an "invasion of the privacy right of secrecy involves the *content* of communication

that occurs when someone's private, personal information is disclosed to a third person."  <u>Id.</u> at

149 (emphasis in original).  Whereas, an "[i]nvasion of the privacy right of seclusion involves the

*means, manner, and method of communication* in a location (or at a time) which disturbs the

recipient's seclusion."  <u>Id.</u> at 149 (emphasis in original).

13

The TCPA prohibits the "sending of unsolicited advertisements to fax machines." Id. at 141 (citing 47 U.S.C. § 227(b)(1)(c)).  As a result, plaintiffs alleging violations of the TCPA allege invasions of their privacy rights of seclusion.  Id. at 149.  Thus, it must be determined whether St. Paul's advertising injury provision provides coverage for seclusion damages.

The New Jersey Supreme Court has never ruled on this coverage issue, and in fact, this issue was first and only decided in a New Jersey state court decision in January 2007 by the Honorable Jonathan N. Harris, J.S.C.  Myron Corp. v. Atlantic Mutual Ins. Corp., No. BER-L-5539-06, (N.J. Law. Div. Jan. 22, 2007).   Regarding coverage issues for TCPA cases, Judge Harris observed:

> The questions that are raised appear to be of first impression in this state; nevertheless, more than a dozen other state and federal courts have addressed the issues, albeit with disparate and uneven results. This legal battleground is littered on both sides with the detritus of an incrementally waged war on multiple fronts.

Myron Corp., No. BER-L-5539-06, slip. op. at 1-2.

Additionally, in July of 2007, the Massachusetts Supreme Court applied New Jersey law in an insurance coverage dispute concerning a TCPA class-action suit.  Terra Nova Ins. Co. v. Fray-Witzer, 449 Mass. 406 (2007).[12]  Thus, both Judge Harris and the Massachusetts Supreme Court found that the insurer had a duty to defend its insured in the context of the policies at issue in those cases.  Myron Corp., No. BER-L-5539-06, slip. op. at 14-15; Terra Nova Ins. Co., 449 Mass. at 418. However, I find that the Myron Corp. and Terra Nova Ins. Co. cases do not compel the same result in the instant case since the policy provisions in Myron and Terra Nova employed different language

---

[12]This recent decision reversed Terra Nova Ins. Co. v. Metro. Antiques, LLC, 2006 Mass. Super. LEXIS 7 (Super. Ct. 2006), a case cited by St. Paul in support of its arguments that it owes no duty to defend Brother, after the briefing had been completed.

from the provision at issue here.  These differences also speak to a different  result.  Further, the

Myron and Terra Nova decisions are not binding on this  Court, and I predict that if the New Jersey

Supreme Court were presented with St. Paul's advertising injury provision, the Court would find that

St. Paul has no duty to defend Brother because Brother did not buy insurance policies for seclusion

damages; instead, it insured against, among other things, damages arising from violations of content-

based privacy, and thus, coverage for a blast fax claim is precluded under St. Paul's  "advertising

injury offense."

Every Court to consider a St. Paul policy has concluded that its advertising injury provision

does not apply to TCPA blast fax claims.  See Resource Bankshares Corp., 407 F.3d at 642-43, cert.

denied 2005 U.S. LEXIS 7892 (U.S. Oct. 31, 2005) (advertising injury provision at issue was

"making known to any person or organization written or spoken material that violates a person's right

of privacy"); see also St. Paul Fire and Marine Ins. Co. v. Onvia, 2007 U.S. Dist. LEXIS 11650, at

*12-18 (W.D. Wa. Feb. 16, 2007 (advertising injury provision at issue was "making known to any

person or organization covered material that violates a person's right of privacy"); see also ACS

Systems, Inc., 147 Cal. App. 4that 143, 151 (advertising injury provision at issue was "making known

to any person or organization written or spoken material that violates an individual's right of

privacy"); see also Melrose Hotel Co. v. St. Paul Fire and Marine Ins. Co., 432 F.Supp.2d 488, 491,

504 (E.D. Pa. 2006)[13] (advertising injury provision at issue was "making known to any person or

organization covered material that violates a person's right to privacy"); see also St. Paul Fire and

Marine Ins. Co. v. Brunswick Corp., 405 F. Supp. 2d 890, 893, 895 (N.D. Ill. 2005) (advertising

injury provision at issue was "oral, written or electronic publication of material in your Advertisement

---

[13]This case is currently on appeal to the Third Circuit.

that violates a person's right of privacy").

Further, these courts, as well as courts considering non-St. Paul policies, have found St. Paul's advertising injury provisions to be "written in admirably plain English," "tightly worded," and "clear and unambiguous." Resource Bankshares Corp., 407 F.3d at 634 (Fourth Circuit found St. Paul's policies to be "written in admirably plain English"); Hooters of Augusta, Inc. v. Am. Global Ins. Co., 157 Fed. Appx. 201, 205 (11th Cir. 2005) (Eleventh Circuit found St. Paul's policy language to be "a more tightly worded advertising-injury provision"); Melrose Hotel Co., 432 F.Supp.2d at 504 (court found St. Paul's provision to be "clear and unambiguous"). Despite these holdings, Brother claims that an ambiguity exists in St. Paul's advertising injury provision in that "nothing within the St. Paul policy supports a result limiting coverage to 'secrecy' type claims only." Brother's Opp. at 21 (emphasis in original). According to Brother, had St. Paul wanted to limit coverage to "secrecy" type claims only, Brother could have drafted its provision as follows: "Making known to any person or organization covered material **the content of which** violates a person's right of privacy." Id. (emphasis in original). However, Brother fails to take into account the numerous courts which have all found that St. Paul's provisions are unambiguous. For example, in Onvia, the court held that the same provision at issue in the instant case, "making known to any person or organization covered material that violates a person's right of privacy," was unambiguous. Onvia, 2007 U.S. Dist. LEXIS 11650 at *12. Although the Onvia Court opined that the provision "could have been more clear in hindsight," the provision was still unambiguous because the provision "read as a whole and in context with the rest of the policy language," was clear. Id.

In ACS Systems, Inc., the California Court of Appeal for the Second Appellate District interpreted the same St. Paul policy language at issue in the instant case. ACS Systems, Inc., 147 Cal.

App. 4th at 148.  In <u>ACS</u>, the insured sought coverage from St. Paul for an underlying class action suit that alleged violations of the TCPA and California state laws.  <u>Id.</u> at 141.  The underlying class action complaint alleged that two companies, ACS and DataMart, had "faxed thousands of unsolicited advertisements for ACS to facsimile machines of persons, businesses, and entities in California, which violated the TCPA" and California laws.  <u>Id.</u> at 148.   The <u>ACS</u> Court opined that although "sending unsolicited faxed advertisements constitutes a 'making known' of 'written . . . material' to the recipient," the St. Paul provision required an additional element and thus, merely "making known written material is not enough to trigger coverage" under St. Paul's policy language.  <u>Id.</u> at 149. Rather, under the St. Paul policy, coverage is triggered when "the *content* of the 'material' violates someone's right of privacy when that material is 'made known.'"  <u>Id.</u> (emphasis in original).[14] Therefore, under St. Paul's policy, "coverage applies to liability for injury caused by the disclosure of private *content* to a third party–to the invasion of 'secrecy of privacy' caused by 'making known' to a third party 'material that violates an individual's right of privacy,'" and accordingly, the "recipient of an unauthorized advertising fax has no claim that 'material that violates an individual's

_____

[14]The <u>ACS Systems, Inc.</u> Court found the use of "that" as a relative pronoun to be significant when interpreting St. Paul's "making known" provision.  <u>ACS Systems, Inc.</u>, 147 Cal. App. 4th at 150.  Specifically, the court found:

> Considered grammatically, the word "that" in "[m]aking known to any person or organization written or spoken material that violates an individual's right of privacy" can reasonably be interpreted only to refer to "material."  We find that "material" is not only the last antecedent of "that" but is also its only antecedent.  "That" does not refer to "making known."  Thus this particular advertising offense only refers to "material that violates an individual's right of privacy," and does not refer to a "making known that violates an individual's right of privacy."

<u>Id.</u>

right of privacy' has been 'made known' to a third party." Id. at 150 (emphasis in original); see also Melrose Hotel Co., 432 F. Supp. at 503 ("'making known to' requires that at least three parties be involved" – (1) the discloser; (2) "the recipient of the disclosure"; and (3) "the person whose private material has been disclosed").

Similarly, in Resources Bankshares Corp. the Fourth Circuit also interpreted St. Paul's "making known" policy language and found that St. Paul's policy language is content-based and provides coverage only against violations of the privacy right of secrecy. Resource Bankshares Corp., 407 F.3d at 641. The court found that "the plainest and most common reading of the phrase indicates that 'making known' implies telling, sharing or otherwise divulging, such that the injured party is the one whose private material is *made known*, not the one *to whom* the material is made known." Id. (emphasis in original). The court further found that: "It requires undue strain to believe that sending an unsolicited fax ad that has no private information or content (but rather simply advertised fairly the sender's wares) can reasonably be said to 'make known' material that violates a person's right to privacy." Id.

Equally compelling, all the cases cited by Brother in support of its argument that coverage should apply to the class-action suit deal with advertising injury provisions that are different and distinguishable from St. Paul's provision. See e.g., Hooters of Augusta, Inc., 157 Fed. Appx. at 205 (advertising injury provision at issue was "oral or written publication of material that violates a person's right of privacy"); see also Park Univ. Enters., Inc. v. Am. Cas. Co., 442 F.3d 1239, 1247 (10th Cir. 2006) (advertising injury provision at issue was "oral or written publication of material that violates a person's right of privacy"); see also Western Rim Inv. Advisors, Inc. v. Gulf Ins. Co., 269 F. Supp.2d 836, 840 (N.D. Tex. 2003) (advertising injury provision at issue was "oral or written

publication of material that violates a person's right of privacy"); <u>Myron Corp.</u>, No. BER-L-5539-06, slip. op. at 5 (advertising injury provision at issue was "[o]ral or written publication, in any manner, of material that violates a person's right of privacy"); <u>Valley Forge Ins. Co. v. Swiderski Electronics, Inc.</u>, 223 Ill. 2d 352, 356 (2006) (advertising injury provision at issue was "oral or written publication, in any manner, of material that violates a person's right of privacy").

In fact, some of the courts finding coverage have specifically distinguished the provisions in their cases from the cases interpreting St. Paul's policy and have found that St. Paul's provision suggests a focus on "secrecy" and not "seclusion." <u>See</u> <u>e.g.</u> <u>Hooters of August, Inc.</u>, 157 Fed. Appx. at 208.  In <u>Hooters of Augusta, Inc.</u>, the Eleventh Circuit distinguished its case from the <u>Resources Bankshares Corp.</u> case (interpreting a St. Paul policy) and commented that <u>Resources Bankshares Corp.</u>:

> involved a more tightly worded advertising-injury provision that described the covered activity as "making known to any person or organization written or spoken material that violates a person's right to privacy." *Resource Bankshares*, 407 F.3d at 641.  This wording seems to have been a significant factor in the court's decision . . . The insurance contract in this case, however, refers to "oral or written publication" of such material, which does not suggest the focus on secrecy that "making known" does.

<u>Id.</u>; <u>see</u> <u>also</u> <u>Terra Nova Ins. Co.</u>, 449 Mass. at 415 ("The policy at issue in *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.* . . . was different from the policies here at issue inasmuch as it defined an 'advertising injury' as '[m]aking known to any person or organization written or spoken material that violates a person's right of privacy'"); <u>see</u> <u>also</u> <u>Park Univ. Enters., Inc.</u>, 442 F.3d at 1249 (Eleventh Circuit found the advertising injury provision in <u>Resources Bankshares Corp.</u> to be "distinct" from its provision, and therefore, the Eleventh Circuit found the <u>Resources</u> holding to be "not determinative of the issue" in its case); <u>see</u> <u>also</u> <u>Valley Forge Ins. Co.</u>, 223 Ill. 2d at 377 (Illinois

19

Supreme Court found that <u>Resource Bankshares Corp.</u>, <u>Brunswick</u>, and <u>Melrose Hotel Co.</u> were distinguishable from its case "in one particularly significant respect: they involved the interpretation of different policy language").

Brother takes issue with the distinction drawn by the courts ruling in favor of St. Paul and argues that there is no distinction between "making known" and "publication."  Brother's Opp. at 23.  Citing to no authority, Brother claims that "St. Paul's policies merely substitute the word 'publication' with its dictionary definition," and "St. Paul's attempt to distinguish the word 'publication' and the phrase 'making known' is merely a creative way to get around the fact that court's [sic] have routinely held that there is coverage for TCPA violations when advertising injury is defined using the term 'publication.'"  Id. at 23-24.  This Court is not persuaded by Brother's argument and notes the total absence of authority for Brother's position.[15]  To the contrary, the case law, discussed at length above, squarely rejects Brother's argument.

Guided by the holdings of five courts who have previously interpreted similar St. Paul policy language, as well as the many courts which have distinguished St. Paul's language from cases where courts have found coverage, this Court finds that the "making known" language at issue in the instant case requires that in order for coverage to be triggered, there must be

---

[15]Similarly, this Court is not persuaded by Brother's argument that the definition of "covered material" is "critical to the analysis" of "whether there is a possibility of coverage," and its suggestion "that, in the context of an invasion of privacy, it is the manner of transmission, and not the content of the material itself, that is the proper focus."  Brother's Opp. at 18.  Brother again fails to cite to any legal authority in support of its position.  Moreover, as St. Paul notes, "the phrase 'covered material' only appeared in the '02 to '03 policy," and thus, "[b]ecause Brother's advertising-injury argument hinges on this one phrase," an argument could be made that Brother "waived any argument that the '01 to '02 policy provided coverage under that provision."  St. Paul Memorandum in Opposition to Brother's Cross-Motion, dated April 23, 2007 ("St. Paul's Reply"), at 9, fn. 4.

disclosure of private content to a third party.  Here,  the Court finds that St. Paul's advertising

injury provision,  is clear and unambiguous, and therefore, pursuant to New Jersey law, the Court

will "interpret the policy as written and avoid writing a better insurance policy than the one

purchased."  President, 180 N.J. at 562 (2004) (citing Gibson, 158 N.J. at 670.  Here, coverage

cannot be triggered because nothing in Brother's unsolicited faxed advertisement violated any of

the recipients' privacy rights of secrecy.  The faxes sent by Brother contained no facts about the

recipients and did not disclose any private information about them to third parties.  Rather, the

faxes merely contained information advertising Brother's P-Touch labeling systems.

　　　　　　　　　2.　　Analysis of the Context of the Provision

　　　　Next, this Court, consistent with New Jersey's teachings on how to interpret insurance

policies, looks to the context in which St. Paul's "making known" language appears.  Morrison,

381 N.J. Super. at 532.  Context certainly "matters," and St. Paul's "making known" policy

language, when read in the context of its other advertising injury offenses, further confirms that St.

Paul's policy only provides coverage for violations of content-based disclosures involving the

privacy right of secrecy.  See Resource Bankshares Corp., 407 F.3d at 642; see also Brunswick,

405 F. Supp. 2d at 895 (even if St. Paul's provision was "not unambiguous simply from the

construct of the sentence itself (which it is), it becomes even clearer when viewed in the context of

the entire contract definition of advertising injury" that St. Paul's "making known" policy language

"refers to the content of the material published, not from the publishing itself"); see also ACS

Systems, Inc., 147 Cal. App. 4th at 151 ("St. Paul policy definitions of 'advertising injury offenses'

provide a context that clarifies the meaning of the provision at issue").

　　　　As noted above, St. Paul's advertising injury offense includes the following specific

21

offenses:

- •     Libel, or slander, in or with covered material.

- •     Making known to any person or organization covered material that disparages the business, premises, products, services, work, or completed work of others.

- •     Making known to any person or organization covered material that violates a person's right of privacy.

- •     Unauthorized use of any advertising material, or any slogan or title, of others in your advertising.

St. Paul's 2002-2003 Policy , Policy No. TE02901670, at p. 179.  As the Fourth Circuit found in Resource Bankshares Corp., "the meaning of 'making known' in the third-listed offense is also informed by its next-door neighbor, which provides coverage for making known disparaging material.  It is difficult to imagine how 'making known' disparaging material harms the *recipient* of the material."  Resource Bankshares Corp., 407 F.3d at 641 (emphasis in original).  Instead, it was "clear" to the Fourth Circuit "that both of these 'making known' provisions focus on harm to a third party" and that the "four offenses all share the common thread of assuming that the victim of the advertising injury offense is harmed by the sharing of the *content* of the ad, not the mere *receipt* of the advertisement."  Id. (emphasis in original); see also Melrose Hotel Co., 432 F. Supp. 2d at 502 (all of St. Paul's four advertising injury offenses "clearly relate to the content of the covered material," and "[a]ll of these offenses address the message conveyed rather than the method of conveyance"); see also Onvia, 2007 U.S. Dist. LEXIS 11650, at *13 (St. Paul's policy language, in context, "covers claims when the 'making known' of the *content* of material, and not just a transmission, violates a person's right to privacy.  The policy does not cover all privacy violations resulting from advertising") (emphasis in original).

Likewise, in <u>ACS Systems, Inc.</u>, the court interpreted St. Paul's advertising injury offenses "by giving effect to every part of the policy, with each clause helping to interpret the other, so as to avoid finding ambiguity in the abstract and in order . . . to construe language in the context of the contract as a whole." <u>ACS Systems, Inc.</u>, 147 Cal. App. 4th at 151.  The court found that the three other advertising injury offenses "all involve the insured's making known or unauthorized taking or use of *content* which injures someone." <u>Id.</u> (emphasis in original).  Interpreting the "making known" provision in the context of these three offenses, the court concluded that the "making known" provision "likewise involves not the mere communication or 'making known' of written material or spoken material." <u>Id.</u>  Therefore, the "covered advertising injury offense involves communication or making known of written or spoken material whose content injures someone else." <u>Id.</u>

In response to St. Paul's argument that "context matters" and in contravention of cases that have all held that St. Paul's "making known" policy language when interpreted in context with its other advertising injury offenses further confirms that St. Paul's "making known" provision is content-based, Brother, in its Opposition and Cross-Motion, criticizes St. Paul's context argument and classifies St. Paul's "making known" provision as a "catch all" provision that covers both secrecy and seclusion claims.  Brother's Opp. at 19-20.  Brother contends:

> St. Paul's "context" argument is another way of saying "if two of three items share a characteristic, the third necessarily shares the same characteristic."  By this logic, is a bowl containing an apple, an orange and a carrot is [sic] a bowl of fruit, not a bowl containing two pieces of fruit and one vegetable.

<u>Id.</u> at 21, fn. 4.  In its Reply papers, Brother further explained its above response and expanded it:

> In its analysis, Brother properly considered each and every advertising

23

> injury provision in context and conducted the exact same analysis (reviewing both the form of communication and the form of communication and the type of injury) when determining the scope of coverage.  The result is an ambiguity that, under New Jersey law, should be resolved in Brother's favor . . . .
>
> The point of Brother's argument was not that it is peculiar to group dissimilar objects together (*i.e.*, to have a bowl containing two fruits and one vegetable) but rather that one must still recognize what the items actually are, irrespective of whether they are grouped together. A vegetable is still a vegetable even when it is placed in a bowl with fruit.  Similarly, the violation of a person's right of privacy can still be based on seclusion even when the other sub-parts of the advertising injury provision are content based, particularly because each advertising injury describes a separate and distinct offense.

Brother's Reply in Support of its Motion for Summary Judgment, dated April 30, 2007 ("Brother's Reply"), at 3.

The Court is not persuaded by Brother's argument which consists of conclusory statements without citation to any legal authority.  Moreover, Brother fails to discuss, let alone distinguish, the St. Paul case law in which five courts, including the Fourth and Eleventh Circuits, have held that context matters and when read in context, the St. Paul's "making known" provision involves the making known of material whose content causes damages.  Therefore, as in Resource Bankshares Corp., Brunswick, ACS Systems, Inc., Melrose Hotel Co., and Onvia, I find that it is clear from the context of the St. Paul advertising injury provision at issue here that St. Paul's policy provides coverage only if the harmful content of the material violates the privacy right of secrecy.  There is no ambiguity.  Accordingly, the policy does not provide coverage for a violation of theseclusion right of privacy.

_____**D.     St. Paul's Property Damage Provision**

St. Paul's policy also provides Brother with coverage for the following:

24

**Property Damage Coverage.**  We'll pay amounts any protected person is legally required to pay as damages for covered . . . property damage that:

- happens while this agreement is in effect; and

- is caused by an event.

*          *          *

*Property damage* means:

- physical damage to tangible property of others, including all resulting loss of use of that property; or

- loss of use of tangible property of others that isn't physically damaged.

***

*Event* means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

St. Paul's 2002-2003 Policy , Policy No. TE02901670, at p. 177-78.  However, St. Paul's property damage is subject to an exclusion for any property damage that is "expected or intended" by the insured.  Id. at 194.  Specifically, the policy provides: "We won't cover . . . property damage that's expected or intended by the protected person."  Id.

Brother claims that "[t]here is no genuine dispute that the Stonecrafters Complaint alleges 'property damage' as that terms [sic] is defined by the policy" and cites as "way of example," to the following paragraphs of the Stonecrafters Complaint:

Defendant's actions caused damages to Plaintiff and the other class members, because their receipt of Defendant's unsolicited fax advertisements caused them to lose paper and toner consumed as a result.

*     *     *

25

> Plaintiff and the other members of the class have been damaged by
> reason of their loss of toner, paper and the unauthorized and unlawful
> wear tear on their facsimile machines.

Brother's Opp. at 13 (quoting ¶¶ 25, 37) (emphasis omitted).

As a threshold matter, the Court agrees with Brother and concludes that using one's fax machine, paper, and toner without permission qualifies as property damage under St. Paul's policy. Therefore, the Court must now determine whether the property damage alleged in the Stonecrafters Complaint was caused by an "event."

The New Jersey Supreme Court adheres "to the prevalent New Jersey rule . . . that the accidental nature of an occurrence is determined by analyzing whether the alleged wrongdoer intended or expected to cause an injury." Voorhees, 128 N.J. at 183.  If the wrongdoer did not intend or expect to cause an injury, "then the resulting injury  is 'accidental,' even if the act that caused the injury was intentional."  Id.  The Supreme Court reasoned that this "interpretation prevents those who intentionally cause harm from unjustly benefitting from insurance coverage while providing injured victims with the greatest chance of compensation consistent with the need to deter wrong-doing."  Id.  In addition, it "also accords with an insured's objectively-reasonable expectation of coverage for unintentionally-caused harm."  Id.

Brother argues that "St. Paul's argument regarding the expected or intended exclusion . . . raises genuine issues of material fact as to Brother's subjective intent in sending the facsimile advertisements," and "[t]herefore, the analysis of the expected or intended exclusion must await another day for resolution."  Brother's Opp. at 14.  Brother further argues that "the proper interpretation of the expected or intended exclusion requires St. Paul to show that Brother subjectively intended to harm the recipients of its fax advertisements," and pursuant to relevant

26

case law, Brother would still "be entitled to coverage even if its 'actions were negligent or reckless.'" Brother's Opp. at 14-15 (quoting Carter-Wallace, Inc. V.v. Admiral Ins. Co., 154 N.J. 312 (1998)).

Although in Melrose Hotel Co., the Eastern District of Pennsylvania applied Pennsylvania law and not New Jersey law, this Court finds Melrose to be instructive in that similar to New Jersey courts, "Pennsylvania courts use a subjective standard to determine whether an insured intended an injury and must decide whether the insured 'desired to cause the consequences of his act or if he acted knowing that such consequences were substantially certain to result." Melrose Hotel Co., 432 F. Supp. 2d at 507.  Therefore, under Pennsylvania law, "'it is not sufficient that the insured intends his actions; rather, for the resulting injury to be excluded from coverage, the insured must have specifically intended to cause harm,'" and thus, "forseeability is irrelevant." Id. (internal citations omitted).  The Melrose Court found that the sending of blast faxes did not constitute an "event" under the St. Paul policy at issue there due to the absence of the following: "(1) any distinct allegations that Melrose acted negligently; (2) any evidence that the faxes were accidently sent to those who did not wish to receive them; or (3) any evidence that Melrose believed that the faxes would go only to those who had authorized their receipt . . . ." Id. at 510.

The Melrose Court rejected Melrose's argument "that it was ignorant that its own intentional acts violated the TCPA because "[i]gnorance is not synonymous with negligence, and neither the . . . Complaint nor the record before [the] Court contain support for a claim of negligence on the part of Melrose." Id.  Further, the court found that "Melrose's knowledge about the TCPA and its lack of intent to violate the TCPA are irrelevant to whether it intended to cause harm that befell Class members" because "Melrose knew that its actions would cause the very

27

harm that the TCPA aims to prevent." Id.  As a result, the Melrose Court held that "no duty to
defend arises under the Policy's property damage provisions." Id.

Here, applying New Jersey's subjective intent standard to whether Brother intended or
expected to cause an injury, this Court finds that Brother subjectively intended to cause the
property damage alleged in the Stonecrafters Complaint.  Regardless of whether Brother knew it
was violating the TCPA or not, Brother knew it was sending unsolicited blast faxes to recipients'
fax machines without the recipients' permission.  Like the insured in Melrose, Brother has
presented no evidence that would suggest that its blast faxes were sent negligently, recklessly, or
accidentally.

However, Brother argues that it, similar to the insured in Myron Corp. believed that "the
faxes would be welcomed by the recipients," and therefore, "it did not intend the resulting
damage." Brother's Reply at 9.  As a result, Brother asks this Court to adopt the holding in Myron
Corp. and find that because Brother did not intend the resulting damage, the property damage
alleged in the Stonecrafters class-action was caused by an "occurrence," and accordingly, Brother
is entitled to property damage coverage.

In Myron Corp., the insured claimed "that it did not intend to injure because it believed
that it was sending advertisements only to its customers and persons with whom it had a prior
business relationship and who invited or permitted the fax transmission."  Myron Corp., No. BER-
L-5539-06 at 10.  The Court there found that "this contention supports the theory that when Myron
sent this fax to Stonecutters, Inc. it thought it had permission to do so."  Id.  Therefore, the court
held that "any use of Stonecutters, Inc.'s fax machine, toner, and paper could not have resulted in
injury because Myron thought the fax was welcome." Id. at 10-11.

Contrary to the insured in <u>Myron</u>, Brother  has offered no evidence that would cause a reasonable person to mistakenly believe that it had received prior express consent to send its fax advertisements, and without such evidence, Brother cannot begin to carry its burden that its conduct potentially merits coverage.  In <u>Resource Bankshares Corp.</u>, the insured did not deny that it intentionally sent the blast faxes.  <u>Resource Bankshares Corp.</u>, 407 F.3d at 638.  Instead, the insured submitted "the possibility that it only intended to fax ads to recipients who actually wanted them, and only did otherwise inadvertently."  <u>Id.</u>  In support of its argument that it was entitled to property damage coverage, the insured cited to several cases that "basically hold that various actions which are not necessarily injurious when consent exists can be an accident under insurance law when they are mistakenly performed on an *unconsenting* party."  <u>Id.</u> (emphasis in original).  The Fourth Circuit was not persuaded by the insured's "accidental fax" argument because the insured "plainly (1) intended to transmit the faxes to *someone*, and (2) fails to present evidence that could reasonably be mistaken as express permission to send these faxes, we can only conclude that the sending was not accidental."  <u>Id.</u> at 639 (emphasis in original); <u>see</u> <u>also</u> <u>Melrose Hotel Co.</u>, 432 F. Supp. 2d at 511 (Eastern District of Pennsylvania was not persuaded by insured's "accidental fax" argument because "[a]s in *Resource Bankshares*, the record contains no evidence that would support a finding that Melrose reasonably believed it had express prior permission to fax its advertisements to Class Members.  The Fourth Circuit further reasoned that:

> It is obvious to anyone familiar with a modern office that receipt is a "natural or probable consequence" of sending a fax, and receipt alone occasions the very property damage the TCPA was written to address: depletion of the recipient's time, toner, and paper, and occupation of the fax machine and phone line.

<u>Id.</u>

Like the courts in <u>Resources Bankshares Corp.</u> and <u>Melrose Hotel Co.</u>, this Court is not

persuaded by Brother's accidental fax argument because no evidence in the record supports it.  As

in <u>Resources</u> and <u>Melrose</u>, the record here contains no evidence that would support a finding that

Brother reasonably believed that it had express prior permission to fax its advertisements to class

members.  In fact, Brother only mentions on the last page of its Reply this argument in support of

its contention that the property damage alleged in the <u>Stonecrafters</u> Complaint was caused by an

"event," and thus, St. Paul had a duty to defend; Brother merely states: "Brother was sending faxes

to potential customers.  Therefore, Brother was justified in believing that the faxes would be

welcomed by the recipients and not injurious."[16]  Brother's Reply at 9. Clearly, this unsupported

assertion does not establish that Brother thought that its blast faxes to recipients, with whom it had

never conducted business, were welcome.  Further, Brother fails to produce any evidence as to why

Brother targeted these "potential customers" or any evidence that would indicate that Brother had a

---

[16]In his March 19, 2007 Certification, Henry Sacco, Brother's in house counsel, certified that:

> The allegedly offending faxes were sent from Brother's headquarters in Bridgewater, New Jersey and from Tennessee.
>
> Brother did not intend to cause injury or damage to the recipients of the facsimiles.
>
> In fact, Brother sent the facsimile advertisements to provide savings to potential customers and believed that the facsimile advertisements would result in additional sales - not injury or damage to the recipients.

Sacco Cert. at ¶¶ 8-10.  Although Brother includes these contentions in its Cross-Motion's Statement of Facts, it failed to include and/or reference these contentions in support of its argument that St. Paul had a duty to defend Brother pursuant to St. Paul's property damage provision in its Cross-Motion.

previous business relationship with these "potential customers."  Thus, Brother's use of the phrase

"potential customers" ends the inquiry; and that distinguishes this case from Myron where the

insured asserted it sent its advertisements to its customers with whom it had a prior business

relationship and not simply "potential customers."

St. Paul's exclusionary provision also forecloses coverage in the instant case because the

Court finds that Brother expected or intended the property damaged alleged in the Stonecrafters

Complaint.  In American States Insurance Company, the Seventh Circuit was asked to determine

whether a policy's intentional-tort exception, which foreclosed "coverage when the recipient's loss

is 'expected or intended from the standpoint of the insured,'" was applicable in a TCPA blast fax

class-action.  American St. Ins., 492 F.3d at 943.  The Seventh Circuit opined:

> junk faxes use up the recipients' ink and paper, but senders anticipate
> that consequence.  Senders may be uncertain whether particular faxes
> violate § 227(b)(1)(c) [the TCPA] but all senders know exactly how
> faxes deplete recipients' consumables.  That activates the policy's
> intentional-tort exception (which applies to the property-damage
> coverage though not the advertising-injury coverage): it forecloses
> coverage when the recipient's loss is "expected or intended from the
> standpoint of the insured."  Because *every* junk fax invades the
> recipient's property interest in consumables, this normal outcome is
> not covered.

Id. (emphasis in original); see also ACS Systems, Inc., 147 Cal. App. 4th at 155 (exclusionary

provision applied because the "sender of a fax necessarily anticipates and intends the consequence

that printing the faxed document will use the recipient's ink and paper and will cause the

recipient's loss of use of the fax machine during transmission").

A similar exclusion provision in Melrose Hotel Co., also foreclosed coverage.  The

exclusion provision in Melrose was for loss that was "expected or intended by the protected

person."  Melrose Hotel Co., 432 F. Supp. 2d at 511.  As stated previously, Pennsylvania law

governed the case, and pursuant to Pennsylvania law, "[a]n insured intended to cause harm if it

'desired to cause the consequences of his act or if [it] acted knowingly that such consequences

were substantially certain to result.'"  Id.  Regarding an insured's intent, Pennsylvania courts

"employ a subjective standard . . . ."  Id. (internal citations omitted).  The Melrose Court found that

"[u]nder this definition, Melrose clearly intended to use the resources of its fax recipients" because

the court did "not interpret Pennsylvania law to require that the insured must intend to violate the

law before coverage is foreclosed under an exclusionary clause."  Id. at 511-12.  Instead, the

Melrose Court foreclosed coverage "because Melrose intended the very harm that the TCPA is

designed to prevent."  Id. at 512.

Here, Brother may not have anticipated that its faxes would violate the TCPA, but

Brother did know that by sending blast faxes it would use the toner, ink, and paper of the recipients

of the faxes.  Therefore, St. Paul's exclusionary provision forecloses coverage here because

Brother expected or intended the property damage alleged in the Stonecrafters Complaint.

Guided by the case law on insurance coverage for violations of the TCPA as well as New

Jersey law on what constitutes an "accident," the Court predicts that the New Jersey Supreme

Court would not find that the allegations in the Stonecrafters  Complaint an "accident" and would

therefore reject a duty to defend in this case under the policy's "property damage" provision.

Further, the Court predicts that the New Jersey Supreme Court would find St. Paul's exclusionary

provision to foreclose property damage coverage since Brother expected or intended the property

damage alleged in the Stonecrafters Complaint by its sending of unsolicited fax advertisements.

     E.     **St. Paul's Motions to Strike**

          1.     References to Settlement

On April 23, 2007, St. Paul filed its Motion to Strike all references to confidential settlement communications discussed or referenced to in Brother's (a) Opposition and Cross-Motion for Summary Judgment, (b) Statement of Undisputed Material Facts, and (c) Certification of Henry Sacco.  St. Paul argues that pursuant to Rule 408 of the Federal Rules of Evidence and Third Circuit case law, Brother is prohibited from revealing to the Court the settlement negotiations between the parties.  St. Paul's Memorandum in Support of Motion to Strike, dated April 23, 2007 ("St. Paul's Motion to Strike"), at 1-5.  Further, St. Paul argues that "Brother's references to the parties' unsuccessful settlement negotiations are irrelevant to the insurance coverage legal issues now before the Court on motion."  Id. at 1.

Brother counters by claiming that its only purpose for using the references in its papers was "merely to provide this Court with background information on the history of the case leading up to this point; background information that was necessary and relevant."  Brother's Opposition to St. Paul's Motion to Strike, dated May 9, 2007 ("Brother's Opp. to Motion to Strike"), at 1.  Further, Brother argues that Rule 408 only prohibits the disclosure of settlement negotiations for "improper purposes," and "[t]here is extensive case law finding Rule 408 inapplicable when compromise evidence is offered for a purpose other than to prove the validity, invalidity or amount of a disputed claim."  Id. at 1-2 (emphasis excluded).

The Court agrees with St. Paul.  Rule 408 prohibits the use of evidence of settlement negotiations when:

> offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:
>
> (1) furnishing or offering or promising to furnish--or accepting or offering or promising to accept--a valuable consideration in

> compromising or attempting to compromise the claim; and
>
> (2) conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority.

Fed. R. Evid. 408(a).  However, Rule 408 permits the use of evidence of settlement negotiations "for purposes not prohibited by subdivision (a).  Examples of permissible purposes include proving a witness's bias or prejudice; negating a contention of undue delay; and proving an effort to obstruct a criminal investigation or prosecution."  Id. at 408(b).

Here, it is clear that St. Paul and Brother were involved in settlement negotiations in an attempt to bring an amicable resolution to the insurance coverage disputes of this case.  The Court rejects Brother's argument that this situation is analogous to the cases it cites where evidence of settlement negotiations was permitted for other reasons, such as, to prove: (1) an insurer's bad faith; (2) "a party's intent with respect to the scope of a release"; (3) a "breach of a settlement agreement, as the purpose of the evidence is to prove the fact of the settlement as opposed to the validity or amount of the underlying claim; (4) "a  wrong that is committed during the course of settlement negotiations."  Brother's Opp. to Motion to Strike at 2-3.

_____First, the Court is not persuaded that providing the Court with relevant background information is a situation that would permit the disclosure of confidential, settlement negotiations.  Second, even if providing the Court with relevant background information could be viewed as one of Rule 408's exceptions, the Court finds that the settlement negotiations in this case are irrelevant to the Motions for Summary Judgment currently pending before the Court and have not assisted the Court in its deciding of the pending Motions.  Accordingly, St. Paul's Motion is granted and all

references to confidential settlement communications discussed or referred to in Brother's (a)

Opposition and Cross-Motion for Summary Judgment, (b) Statement of Undisputed Material Facts,

and (c) Certification of Henry Sacco will be stricken.

2.    Brother's Alleged New Arguments

On May 21, 2007, St. Paul filed its Motion to Strike arguments allegedly raised for the first

time in Brother's Reply in Support of Its Motion for Summary Judgment.  In the alternative, St.

Paul asked the Court for leave to file a sur-reply under Local Rule 7.1 (d)(6).  St. Paul claimed that

Brother raised the following three new arguments in its Reply Brief: (1) "that St. Paul had some

sort of duty to sell Brother the policy at issue in *St. Paul Fire & Marine Ins. Co. v. Brunswick

Corp.*, and that Brother's reasonable expectations were somehow affected by the mere existence of

that policy";[17] (2) "Brother's claim that, under New Jersey law, the 'context' provided by the other

words in an advertising-injury offense description's language . . . cannot inform the Court's

understanding of the phrase 'right of privacy' within that offense"; and (3) Brother's "event"

argument regarding St. Paul's property damage provision identified and discussed legal authority

for the first time in its Reply.  St. Paul's Memorandum in Support of Motion to Strike New

Arguments in Brother's Reply Memorandum, dated May 21, 2007, at 2-4.

However, given that the Court, as discussed above, has granted Plaintiff's Motion for

---

[17]The Court again notes Brother's failure to account for the numerous decisions which have all found that St. Paul's provisions are unambiguous, and further, even if the Court were to find that the St. Paul provision at issue in Brunswick was clearer than the provision at issue here, the Court still finds the provision in the instant case to be unambiguous.  See Onvia, 2007 U.S. Dist. LEXIS 11650 at *12 (although the provision at issue "could have been [drafted] more clear in hindsight," the provision was still unambiguous because the provision "read as a whole and in context with the rest of the policy language," was clear).

Summary Judgment and denied Defendant's Motion for Summary Judgment, the Court finds that St. Paul's Motion to Strike Brother's New Arguments is now moot.  Accordingly, St. Paul's Motion to Strike these arguments is denied.

**IV.     CONCLUSION**

_____For the forgoing reasons, Plaintiff's Motion for Summary Judgment is granted, and Defendant's Cross-Motion for Summary Judgment is denied.  Further, Plaintiff's Motion to Strike all references to confidential settlement communications discussed or referred to in Defendant's (a) Opposition and Cross-Motion for Summary Judgment, (b) Statement of Undisputed Material Facts, and (c) Certification of Henry Sacco is granted, and Plaintiff's Motion to Strike arguments allegedly raised for the first time in Defendant's Reply in Support of Its Motion for Summary Judgment, or alternatively, for leave to file a sur-reply under Local Rule 7.1 (d)(6) is denied.

_____An appropriate Order shall follow.  _____

_____

_____          /s/ Freda L. Wolfson
_____          The Honorable Freda L. Wolfson
                                                                        United States District Judge

Date:  August 29, 2007

36